IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JESUS ENRIQUE URIBE BLANCO, <br><br> Petitioner, <br><br> v. <br><br> RUBEN LEYVA, et al, <br><br> Respondents. | **ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS** <br><br><br> Case No. 4:26-cv-00058-AMA <br><br><br> District Judge Ann Marie McIff Allen |

Before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241.[1] The Court did not hold oral argument.[2] For the reasons discussed below, the Court will deny the Amended Petition.

## BACKGROUND[3]

Petitioner Jesus Enrique Uribe Blanco is a native citizen of Venezuela.[4] On October 27, 2024, Petitioner entered the United States through a designated port of entry in Brownsville,

---

[1] ECF No. 7, filed May 29, 2026.

[2] Habeas Rule 1(b) provides that "[t]he district court may apply any or all of these rules to a habeas corpus petition not" involving a petition under 28 U.S.C. § 2254. Habeas Rule 8(a) provides that "[i]f the petition is not dismissed, the judge must review the answer . . . and any materials submitted . . . to determine whether an evidentiary hearing is warranted." Here, the parties do not dispute the underlying material facts. As such, the Court has determined a hearing is unnecessary.

[3] The Court provides this background summary to contextualize the instant Amended Petition. Unless otherwise noted, the summary is derived from allegations made in the Amended Petition, as well as documents provided in response to the Court's Order to Show Cause. *See* ECF Nos. 7, 9.

[4] ECF No. 9, Ex. 1 at 1.

Texas.[5] His arrival had previously been scheduled through Custom and Border Protection's

("CBP") mobile application known as CBP One,[6] and he informed immigration officials that he

planned to reside in Tampa, Florida.[7] Upon inspection, immigration officials found that

Petitioner was not in possession of documents sufficient for lawful entry into the United States.[8]

He was issued a Notice to Appear ("NTA") ordering him to appear in immigration court in

Orlando, Florida to show why he should not be removed from the United States pursuant to 8

U.S.C. § 1182(a)(7)(A)(i)(I).[9] CBP exercised its discretion to temporarily parole Petitioner from

custody pursuant to 8 U.S.C. § 1182(d)(5)(A).[10]

Petitioner's parole from custody expired on April 24, 2026.[11] He was arrested and

detained by Immigration and Customs Enforcement ("ICE") on May 19, 2026.[12]

---

[5] Id. at 2.

[6] Id.

[7] Id. at 1.

[8] Id. at 2.

[9] Id. Ex. 2. 8 U.S.C. § 1182(a)(7)(A)(i) provides that "any immigrant at the time of application for admission—(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General . . . is inadmissible."

[10] ECF No. 7 ¶ 2. 8 U.S.C. § 1182(d)(5)(A) provides that "[t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States, but such parole of such [noncitizen] shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

[11] ECF No. 7 ¶ 5; id. Ex. 1.

[12] Id. ¶ 10.

Petitioner's removal proceedings in immigration court remain pending.[13]  Although he was initially detained by ICE at Washington County Jail in Hurricane, Utah,[14] he was transferred due to operational constraints to Northwest Processing Center in Tacoma, Washington on May 26, 2026.[15]

Petitioner filed his initial Petition on May 20, 2026.[16]  The instant Amended Petition was filed on May 29, 2026.[17]  That same day, the Court issued an Amended Order to Show Cause, ordering Respondents to show cause why the Amended Petition should not be granted.[18]  Respondents' Response was filed on June 1, 2026,[19] and Petitioner filed his Reply on June 4, 2026.[20]

## **DISCUSSION**

28 U.S.C. § 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States[,]"[21] which includes "[c]hallenges to immigration detention[.]"[22]  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody."[23]

---

[13]  *See* ECF No. 9, Ex. 3.
[14]  ECF No. 7 ¶ 12.
[15]  *Id.*; ECF No. 9, Ex. 3.
[16]  ECF No. 1.
[17]  ECF No. 7.
[18]  ECF No. 8.
[19]  ECF No. 9.
[20]  ECF No. 10.
[21]  28 U.S.C. § 2241(c)(3).
[22]  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).
[23]  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Petitioner alleges in his Amended Petition a claim for Violation of the Immigration and Naturalization Act ("INA") and a claim for Violation of Due Process under the Fifth Amendment. The petition turns largely on two issues: whether his parole was properly terminated and whether he holds the legal status of an "arriving alien"[24] subject to detention under 8 U.S.C. § 1225(b).

**A.      Venue is Appropriate in this Judicial District**

Before turning to the issues above, although neither party has contested that venue is proper in this district, the Court will briefly address whether Petitioner's transfer outside of Utah impacts venue. The Court finds that it does not.

"Under 28 U.S.C. § 2241(a), federal district courts may grant habeas relief only 'within their respective jurisdictions.'"[25] Petitioner was transferred from Washington County Jail in Utah to Northwest Processing Center in Washington on May 26, 2026. Nonetheless, "compliance with the district-of-confinement rule is determined at the time of filing and venue is appropriate here because Petitioner filed the Petition while he was detained in this judicial district."[26] In other words, Petitioner's transfer outside this district "does not defeat [this Court's] initial jurisdiction."[27]

---

[24] The Court uses this term of art to, for the sake of clarity, align with the regulatory language. *See* 8 C.F.R. § 1.2 ("*Arriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry[.]" (emphasis in original)).

[25] *Leonardo G.Z. v. Noem*, 820 F. Supp. 3d 1245, 1251 (N.D. Okla. 2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 447, 449–50 (2004)).

[26] *Id*. at 1252.

[27] *Pinson v. Berkebile*, 604 F. App'x 649, 653 (10th Cir. 2015) (unpublished).

## B.        Petitioner's Parole Was Lawfully Terminated

Petitioner's claim for Violation of the INA appears to be premised on the argument that Respondents failed to lawfully terminate his parole in accordance with the INA and its implementing regulations and thus lack lawful authority to arrest and detain him under 8 U.S.C. § 1225(b). The Court is unpersuaded.

"Under the INA, parole is a discretionary mechanism that permits the temporary physical presence of a noncitizen in the United States without effecting an admission."[28] As 8 U.S.C. § 1182(d)(5)(A) provides, such parole is granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[,]" and it "shall not be regarded as an admission of the [noncitizen]."

Parole granted under § 1182(d)(5)(A) terminates either automatically or on notice.[29] With respect to automatic termination, 8 C.F.R. § 212.5(e)(1) provides that

> [p]arole shall be automatically terminated without written notice (i) upon the departure from the United States of the [noncitizen], or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the [noncitizen] shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

When parole is not terminated automatically, 8 C.F.R. § 212.5(e)(2)(i) provides that

> upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen].

---

[28] *Khubiev v. Baltasar*, No. 25-cv-03955-STV, 2026 WL 864237, at *2 (D. Colo. Mar. 30, 2026) (citing 8 U.S.C. § 1182(d)(5)(A)).

[29] 8 C.F.R. § 212.5(e); *see also Khubiev*, 2026 WL 864237, at *2 ("Parole may terminate either by operation of law upon expiration of the authorized period or by discretionary action of the Secretary.").

Upon termination of parole, the noncitizen "shall be restored to the status that he or she had at the time of parole[,]"[30] and the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."[31]

It is undisputed that Petitioner's parole expired on April 24, 2026. Respondents argue that Petitioner's parole thus terminated automatically as described in § 212.5(e)(1). Petitioner, however, argues that the mere expiration of a parole period does not alone authorize the termination of parole. Instead, according to Petitioner, a determination must be made that the purpose for which parole was authorized was accomplished or that neither humanitarian reasons nor public benefit warrant the noncitizen's continued presence in the United States even where the parole period has expired.

Petitioner's argument "misreads the regulation by conflating automatic expiration with discretionary termination."[32] Under § 212.5(e)(1), parole "*shall* be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized."[33] Section 212.5(e)(2)(i), in contrast, applies only "[i]n cases not covered by paragraph (e)(1)"[34] "where the government elects to terminate parole on notice before it expires, and in that context requires a determination that the purpose of parole has been served or that humanitarian or public benefit justifications no longer exist."[35]

---

[30] 8 C.F.R. § 212.5(e)(2)(i).
[31] 8 U.S.C. § 1182(d)(5)(A).
[32] *Khubiev*, 2026 WL 864237, at *3.
[33] 8 C.F.R. § 212.5(e)(1) (emphasis added).
[34] 8 C.F.R. § 212.5(e)(2)(i).
[35] *Khubiev*, 2026 WL 864237, at *3. Indeed, Petitioner admits that the cases upon which he

Despite the clarity of this language, Petitioner attempts to rely on the cross-reference in § 212.5(e)(1)—which provides that upon automatic termination of parole, a noncitizen, if not departed, "shall be processed in accordance with paragraph (e)(2)"—to argue that an affirmative determination justifying termination must be made even when parole has expired. This argument is not well taken. "[T]he plain language of [§] 212.5(e)(1) expressly provides that parole 'shall be automatically terminated' upon expiration of the authorized period and that 'no written notice shall be required,' which would be inconsistent with importing the notice and determination requirements applicable to discretionary termination under [§] 212.5(e)(2)."[36] Furthermore, "[t]he more natural reading of the regulation is that the cross-reference governs the procedures that follow termination, not the prerequisites for termination itself[.]"[37] That is, upon termination of parole, whether it be an automatic or discretionary termination, the nonresident "shall be restored to the status that he or she had at the time of parole[,]"[38] and "[a]ny further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed."[39] And "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the [noncitizen] be continued in

---

urges this Court to rely dealt with situations where parole was terminated before the original expiration date of the parole authorization. ECF No. 10 at 16–17. That factual distinction is dispositive.

[36] *Khubiev*, 2026 WL 864237, at *3.

[37] *Id*.

[38] 8 C.F.R. § 212.5(e)(2)(i).

[39] *Id*.

custody."[40]

Here, again, it is undisputed that Petitioner's parole expired on April 24, 2026. The Court thus concludes that Petitioner's parole automatically terminated on that date without need for any further determinations.[41] In other words, the notice and determination requirements of § 212.5(e)(2) are inapplicable.[42] Therefore, to the extent Petitioner's claim for Violation of the INA is premised on an unlawful termination of his parole, his claim fails.

## C.   Petitioner is an "Arriving Alien" Subject to Mandatory Detention Pursuant to § 1225(b)

To the extent Petitioner's Violation of the INA claim is premised on a lack of authority to detain Petitioner under 8 U.S.C. § 1225(b), the Court now turns to that issue.

---

[40] *Id*.

[41] *See Khubiev*, 2026 WL 864237, at *3 ("[T]he Court concludes that Petitioner's parole expired by operation of law on that date, and the provisions of Section 212.5(e)(2) concerning execution of prior orders and related determinations do not apply here and do not impose additional requirements on the automatic expiration of parole under Section 212.5(e)(1)(ii)."); *Fuenmayor v. Mullin*, No. 1:26-cv-00622-MIS-LF, 2026 WL 963297, at *2 n.2 (D.N.M. Apr. 9, 2026) (finding that petitioner's parole was lawfully terminated where petitioner's "temporary parole was scheduled to end on October 10, 2025 and he was apprehended after its expiration, on October 29, 2025."); *Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at *4 (D.N.M. Apr. 4, 2026) ("Because the statute and regulations require no notice or additional process for parolees whose parole term expires, Petitioner was not entitled to any additional process before his parole could end.").

[42] Respondents argue that 8 U.S.C. § 1252(a)(2)(B), which provides that "no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary[,]" bars this Court from reviewing a discretionary termination of parole under 8 C.F.R. § 212.5(e)(2). Determining the Court's jurisdiction over such an issue is, however, unnecessary here because Petitioner's parole was automatically terminated, and there is thus no discretionary decision for the Court to review with respect to the termination.

"To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering."[43] This process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether a[ noncitizen] seeking to enter the country is admissible."[44] "Noncitizens who arrive at a port of entry without a visa or other entry document . . . are deemed 'inadmissible' under 8 U.S.C. § 1182(a)(7)."[45] If a noncitizen is deemed inadmissible under 8 U.S.C. § 1182(a)(7), the immigration officer must "order the [noncitizen] removed from the United States without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution."[46] "The government may place the noncitizen into expedited removal proceedings . . . or the government may place the noncitizen into regular removal proceedings under 8 U.S.C. § 1229(a)."[47] "Two provisions of the INA govern the detention of noncitizens with pending removal proceedings":[48] 8 U.S.C. §§ 1225 and 1226.

8 U.S.C. § 1225(b) "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute')[,]"[49] and the statute "divides these applicants into two categories."[50] "First, certain [noncitizens] claiming a credible fear of persecution under § 1225(b)(1) 'shall be detained for further consideration of the application for

---

[43] *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018).
[44] *Id.*
[45] *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132 (D. Or. 2025).
[46] 8 U.S.C. § 1225(b)(1)(A)(i).
[47] *Mendibaev*, 2026 WL 917457, at *3.
[48] *Id.*
[49] *Jennings*, 583 U.S. at 297.
[50] *Id.*

asylum.'"[51] "Second, [noncitizens] falling within the scope of § 1225(b)(2) 'shall be detained for a [removal] proceeding.'"[52] "Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded."[53] "And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."[54] Nonetheless, "the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole [noncitizens] detained under §§ 1225(b)(1) and (b)(2)."[55] "That express exception to detention implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released."[56]

U.S. immigration law "also authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."[57] "Section 1226(a) creates a default rule for those [noncitizens already present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."[58] "Section 1226(a) also permits the Attorney General to release those [noncitizens] on bond, '[e]xcept as provided in subsection (c) of this section.'"[59]

The Court acknowledges that whether a noncitizen already present in the country—such

---

[51] *Id*. (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).
[52] *Id*. (quoting 8 U.S.C. § 1225(b)(2)(A)).
[53] *Id*.
[54] *Id*.
[55] *Id*. at 299 (quoting 8 U.S.C. § 1182(d)(5)(A)).
[56] *Id*. (emphasis in original).
[57] *Id*. at 289.
[58] *Id*. at 303.
[59] *Id*.

as a noncitizen who entered the country without inspection—may be lawfully detained under § 1225(b) is an unsettled issue of great dispute among the courts.[60] But, in this Court's view, that issue is not present here, where it is undisputed that Petitioner presented himself at a port of entry, was subject to detention under § 1225(b), and was paroled under § 1182(d)(5)(A). The Court thus makes no comment as to how it would determine the issue of whether § 1225(b) may be applied to a noncitizen already present in the country. Rather, this case requires the Court to examine whether the granting of parole under § 1182(d)(5)(A) and the expiration of that parole impact the status of a noncitizen who, upon presenting at a port of entry, was deemed inadmissible and detained pursuant to § 1225(b). In other words, where detention was initially governed by § 1225(b) as a noncitizen was an inadmissible "arriving alien,"[61] does a noncitizen at some point shift into a "noncitizen already present in the country" such that his detention following the termination of parole is governed by § 1226(a)?

Respondents assert that Petitioner, as a parolee, is deemed to be "knocking at the gate" and, as such, is necessarily "seeking admission" within the meaning of § 1225(b)(2)(A) such that mandatory detention without an opportunity for a bond hearing is appropriate. In the Amended Petition, Petitioner seems to agree that if Respondents lawfully terminated his parole, they have authority to arrest and detain him under § 1225(b). However, he changes course in his Reply, arguing that he is entitled to have his detention governed by § 1226(a) because he overstayed the

---

[60] *See, e.g., Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184 (D. Utah Jan. 16, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026). *But see, e.g., Cisneros v. Noem*, 820 F. Supp. 3d 1265 (D. Utah 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

[61] To reiterate, 8 C.F.R. § 1.2 provides that "*[a]rriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry[.]"

expiration of his parole and by doing so no longer had the status of an "arriving alien" but became "unlawfully present" in the United States. The Court finds that Respondents have the better argument here for several reasons.

### 1.  The Text of 8 U.S.C. § 1182(d)(5)(A)

First, the Court finds the analysis set forth in *Florez Diaz v. Mullin* persuasive and agrees that "[t]he plain text of § 1182(d)(5)(A) requires a return to the custody, including the accompanying legal status, from which a petitioner was paroled."[62]  Section 1182(d)(5)(A) provides as follows:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States, but such parole of such [noncitizen] shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

As Petitioner argues, the critical question is the meaning of the phrase "returned to the custody from which he was paroled." Petitioner interprets the phrase to merely authorize a return to DHS custody generally such that Petitioner is not necessarily subject to mandatory detention under § 1225(b). The Court disagrees.

As used in § 1182(d)(5)(A), the term "'custody' has been interpreted to include legal status, to only mean physical immigration detention, and to mean restraints on liberty, not

---

[62]  No. 2:26-cv-00639-KWR-JHR, 2026 WL 1481585, at *2 (D.N.M. May 27, 2026).

physical detention."[63] "Regardless of whether 'custody' here refers to physical detention or the mere power to detain, the definition of 'custody' indicates that legal status must be included"— "[t]he definition of 'custody,' at the time of enactment, stated that detention must be done 'by virtue of lawful process or authority.'"[64] Thus, "[e]ven if 'custody,' as used in § 1182(d)(5)(A), does not mean physical detention and only means a restraint on one's liberty, such a restraint requires legal authorization to control or exercise power over another[,]"[65] and "[s]uch legal authority indicates that legal status is implied."[66] Furthermore, the phrase "'shall forthwith return or be returned' demonstrates that, upon revocation of parole, the noncitizen must immediately revert to a previous condition or state."[67] This "mandatory reversion to a previous state or condition suggests a reversion to some past legal authority or status that form the basis for physical custody or general restraints on liberty."[68] Additionally, "[a] plain reading of the phrase 'from which he was paroled' suggests that the noncitizen returns to the 'custody' [he] was in at the time of h[is] release on parole[,]" including "the legal authority or status that authorized the custody."[69]

Petitioner was, as an "arriving alien" determined inadmissible, initially detained at the border subject to § 1225(b). And the text of § 1182(d)(5)(A) indicates that, upon termination of parole, Petitioner reverted to that same legal status. The fact that Petitioner was not taken into

---

[63] *Id.* at *3 (citation modified).
[64] *Id.* (quoting *Custody, Black's Law Dictionary* (6th ed. 1990)).
[65] *Id.*
[66] *Id.*
[67] *Id.* at *4.
[68] *Id.*
[69] *Id.*

physical custody immediately upon termination of his parole does not change that, upon that termination, he holds the legal status of one who has never effected entry into the country and who is subject to detention under § 1225(b).

## 2. *Regulatory Authority*

The INA's implementing regulations regarding parole further support that, after termination of parole, Petitioner holds the legal status of an "arriving alien" subject to detention under § 1225(b), even where Petitioner was not physically detained immediately upon his parole's termination. 8 C.F.R. § 1.2, which defines "arriving alien" in relevant part as "an applicant for admission coming or attempting to come into the United States at a port-of-entry[,]" makes clear that "[a]n arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)(A)], and even after any such parole is terminated or revoked." And 8 C.F.R. § 212.5(e)(2)(i) states that when parole is terminated, either by expiration or discretion, the noncitizen "shall be restored to the status that he or she had at the time of parole." Thus, Petitioner remained an "arriving alien" after the granting of parole under 8 U.S.C. § 1182(d)(5)(A) and its termination, and that termination returned Petitioner to his former status of being subject to detention under § 1225(b).

The Board of Immigration Appeals ("BIA") relied on 8 C.F.R. § 212.5(e)(2)(i) in a recent agency decision, *Matter of Q. Li*, to support its interpretation of the phrase "the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled" to require that "a[ noncitizen] detained under [§ 1225(b)] who is released from detention pursuant to a grant of parole under [§ 1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned

14

to custody under [§ 1225(b)] pending the completion of removal proceedings."[70] Notably, this interpretation aligns with historical agency determinations regarding the effect of parole under § 1182(d)(5)(A) and its earlier iterations.[71] For example, in *Matter of B*, it was stated that the "effect and presumably the purpose of the action of the Immigration and Naturalization Service in paroling the appellant and in holding his appeal until after the termination of the criminal prosecution was to assign to the appellant the fictional status of a parolee, that is, a person who though physically within the United States is *legally outside its gates*."[72] And in *Matter of Dabiran*, the BIA held that because the "applicant's parole alone does not constitute an 'entry,' the fact that there was no immediate action with regard to his continued inspection because of his escape from custody and the assumption of another identity does not alter his status to that of an illegal entrant. When his parole was revoked upon his apprehension . . ., he was 'returned to the custody from which he was paroled.'"[73] The notion, then, that an "arriving alien" remains an "arriving alien" upon the granting of parole under § 1182(d)(5)(A) and its termination is not new. And an "arriving alien" deemed inadmissible is subject to detention under § 1225(b).

---

[70] 29 I. & N. Dec. 66, 69–70 (B.I.A. 2025).
[71] The Illegal Immigration and Reform and Immigrant Responsibility Act ("IIRIRA") was enacted in 1996. "The phrases, 'such parole of such [noncitizen] shall not be regarded as an admission of the [noncitizen],' 'the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled,' and 'thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States,' were present in the pre-IIRIRA versions" of 8 U.S.C. § 1182(d)(5). *Flores Diaz*, 2026 WL 1481585, at *10 (citing 8 U.S.C. § 1182(d)(5) (1952); 8 U.S.C. § 1182(d)(5) (1964); 8 U.S.C. § 1182(d)(5) (1982); 8 U.S.C. § 1182(d)(5) (1988)). "The IIRIRA change in 1996 substituted 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit' for 'for emergent reasons or for reasons deemed strictly in the public interest.'" *Id.* (citing Pub. L. 104–208, 110 Stat. 3009 (1996)).
[72] 2 I. & N. Dec. 172, 175 (B.I.A. 1944) (emphasis added).
[73] 13 I. & N. Dec. 587, 589, 591 (B.I.A. 1970).

Overall, as with the text of § 1182(d)(5)(A), the relevant regulations support the Court's finding that Petitioner remained an "arriving alien" after the granting of parole under § 1182(d)(5)(A) and its termination and that since his parole has now lawfully terminated, he is subject, as he was previously, to detention under § 1225(b).

      3.      *Leng May Ma v. Barber*

Supreme Court case law further supports that, after termination of parole, Petitioner holds the legal status of an "arriving alien" subject to detention under § 1225(b). In *Leng May Ma v. Barber*, the Supreme Court examined whether the granting of temporary parole effected a change in the legal status of a noncitizen who was paroled after having "come to our shores seeking admission."[74] The petitioner argued that, by reason of her parole, she became a noncitizen "'within the United States.'"[75] The pre-IIRIRA version of parole statue provided, similar to the present version, that "parole 'shall not be regarded as an admission of the [noncitizen],' and that after the return to custody the [noncitizen's] case 'shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'"[76] The Supreme Court explained that "[t]he parole of [noncitizens] seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted."[77] "It was never intended to affect a[ noncitizen's] status, and to hold that petitioner's parole placed her

---

[74] 357 U.S. 185, 187 (1958).
[75] *Id*. at 186.
[76] *Id*. at 188.
[77] *Id*. at 190.

legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court."[78]

*Leng May Ma* thus also suggests that Petitioner remained an "arriving alien" after the granting of parole under § 1182(d)(5)(A) and its expiration, and as his parole has now lawfully terminated, he is subject to detention under § 1225(b).

### 4. Synthesis

Based on the text of § 1182(d)(5)(A), the relevant administrative regulations, and the guidance of the Supreme Court, the Court holds that, as Petitioner's parole has lawfully terminated, he holds the legal status of one who has never effected entry into the country and who is subject to mandatory detention without opportunity for a bond hearing under § 1225(b). Finding otherwise could have potentially undesirable implications. The Supreme Court noted that finding parole to alter a noncitizen's legal status "would be quite likely to prompt some curtailment of" parole policy whereby "[p]hysical detention of [noncitizens] is now the exception, not the rule, and is generally employed only as to security risks or those likely to abscond."[79] Furthermore, adopting Petitioner's argument that he is subject to discretionary detention under § 1226(a) because he overstayed his parole period could result in system that "reward[s] noncitizens paroled under § 1182(d)(5)(A) for their failure or refusal to report to ICE as directed."[80]

---

[78] *Id.*

[79] *Id.*

[80] *Chanaguano Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 WL 3013081, at *7 (D. Me. Oct. 28, 2025).

In sum, § 1225(b) is the appropriate statutory basis for Petitioner's detention. To the extent Petitioner's Violation of the INA claim is premised on a lack of authority to detain Petitioner under § 1225(b), his claim fails.

**D.      Petitioner Has No Due Process Rights to the Relief Requested**

Petitioner alleges in his Amended Petition that his continued detention without an opportunity for a bond hearing violates his Fifth Amendment procedural due process rights. On this basis, Petitioner asks the Court to order his immediate release or to require Respondents to provide him a bond hearing.

The Supreme Court wrote in 1892 that as to "'foreigners who have never been naturalized, nor acquired any domicil[e] or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"[81] This rule is premised on several "fundamental propositions:"[82] (1) "the power to admit or exclude [noncitizens] is a sovereign prerogative,"[83] (2) "the Constitution gives the political department of the government plenary authority to decide which [noncitizens] to admit,"[84] and (3) "a concomitant of that power is the power to set the procedures to be followed in determining whether a[ noncitizen] should be admitted."[85] Furthermore, the Supreme Court has held that noncitizens "who arrive at ports of entry—*even those paroled elsewhere in the country for years*

---

[81] *DHS v. Thuraissigiam*, 591 U.S. 103, 138 (2020) (quoting *Nishimura Eiku v. United States*, 142 U.S. 651, 660 (1892)).
[82] *Id*. at 139.
[83] *Id*. (citation modified).
[84] *Id*. (citation modified).
[85] *Id*. (citation modified).

*pending removal*—are 'treated' for due process purposes 'as if stopped at the border.'"[86] Under this legal fiction, known as the entry fiction doctrine, such a noncitizen "cannot be said to have 'effected an entry' into the country, so they have 'only those rights regarding admission that Congress has provided by statute.'"[87]

In *Sierra v. Immigration & Naturalization Service*, the Tenth Circuit discussed the entry fiction doctrine with respect to a noncitizen whose parole approval was withdrawn, stating that "[a]lthough he has been physically present in the United States for more than twenty years, Sierra is 'legally considered to be detained at the border and hence as never having effected entry into this country.'"[88] As such, "'[w]hatever the procedure authorized by Congress is, it is due process as far as a [noncitizen] denied entry is concerned.'"[89] Petitioner argues that *Sierra* is distinguishable because it deals with an "initial grant of parole" while Petitioner was granted parole and allowed to live free from physical detention for nearly two years.[90] This mistakes the facts of *Sierra*. The petitioner in *Sierra* "came to the United States during the 1980 Mariel boat

---

[86] *Id*. (emphasis added) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)).

[87] *Mendibaev*, 2026 WL 917457, at *4 (quoting *Thuraissigiam*, 591 U.S. at 140).

[88] 258 F.3d 1213, 1218 (10th Cir. 2001) (quoting *Gisbert v. U.S. Attorney Gen.*, 988 F.2d 1437, 1440 (5th Cir.), *amended by* 997 F.2d 1122 (5th Cir. 1993)).

[89] *Id.* (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). The Tenth Circuit noted that "[t]he above rule applies to procedural due process challenges such as Sierra's. This case does not involve . . . a substantive due process challenge to congressional legislation." *Id*. at 1218 n.3. While the Amended Petition cursorily references substantive due process, it clearly alleges that "[t]he government's continued detention of Petitioner without an individualize[d] determination or a mechanism to challenge his detention violate[s] his right to procedural due process[.]" ECF No. 7 ¶ 77. And Petitioner's Reply does not seem to address substantive due process. *See* ECF No. 10. Thus, as in *Sierra*, a substantive due process challenge is not before the Court.

[90] *See* ECF No. 10 at 22–23.

lift" and "was paroled into the United States."[91] He then seemingly spent time living in the country free from physical detention.[92] Thus, the petitioner in *Sierra* was, like Petitioner, granted parole and allowed to remain free from physical detention for some time, and the case is not distinguishable on that basis.

In any event, the entry fiction doctrine *Sierra* endorses remains applicable to the instant matter. As has been discussed, Petitioner is, regardless of his parole and its termination, "legally considered to be detained at the border and hence as never having effected entry into this country."[93] Indeed, at least with respect to his Fifth Amendment claim, Petitioner "does not dispute that Congress may classify him as an arriving alien for purposes of the [INA], nor does he contend that parole constituted an admission into the United States."[94] The Supreme Court has made clear that noncitizens who arrive at ports of entry, even those who have been paroled in the country for years, are "treated for due process purposes as if stopped at the border"[95] and have "only those rights regarding admission that Congress has provided by statute."[96] The Tenth Circuit in *Sierra* also espouses this view.[97] While some district courts have determined the issue differently,[98] this Court has not been presented with a compelling reason to diverge from the precedent of the higher courts.

---

[91] *Sierra*, 258 F.3d at 1215–16.
[92] *See id*. at 1216.
[93] *Id*. at 1218.
[94] ECF No. 10 at 22.
[95] *Thuraissigiam*, 591 U.S. at 139 (citation modified).
[96] *Id*. at 140.
[97] *See Sierra*, 258 F.3d at 1218.
[98] *See, e.g., Mendibaev*, 2026 WL 917457, at *4–7.

This is not to say, of course, that Petitioner has no due process rights; "rather, the applicable statutory process shapes [his] procedural due-process rights."[99] Petitioner's detention is authorized under § 1225(b), and thus that statute shapes the procedural due process he is owed.[100] Under § 1225(b), Petitioner is not entitled to immediate release or a bond hearing.[101] And "[b]ecause Petitioner has no statutory right to release or a bond hearing, . . . [he] has no due-process right to the relief requested."[102] Therefore, Petitioner's due process claim fails.

**<u>ORDER</u>**

Based on the foregoing, the Court DENIES the Amended Petition for Writ of Habeas Corpus (ECF No. 7).

SO ORDERED this 16th day of June, 2026.

ANN MARIE MCIFF ALLEN
United States District Court Judge

---

[99] *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020).

[100] Because Petitioner's procedural due process rights are shaped by statute, the Court need not engage in the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Sierra*, 258 F.3d at 1218–20.

[101] *Jennings*, 583 U.S. at 297.

[102] *Gonzalez Aguilar*, 448 F. Supp. 3d at 1212.